UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                            :          CASE NO. 18-62370-WLH
                                  :
CONNIE SANDERS,                   :          CHAPTER     7
                                  :
      Debtor.                     :

**MOTION TO APPROVE SETTLEMENT AGREEMENT UNDER RULE 9019 OF THE
FEDERAL RULES OF BANKRUPTCY PROCEDURE**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee (the "**Trustee**") for the bankruptcy

estate of Connie Sanders ("**Debtor**"), by and through undersigned counsel, and moves, under

Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of a settlement agreement

between Trustee; Debtor; Deene J. Sanders ("**Mr. Sanders**"); S&S Commercial Contractors, Inc.

("**S&S**); 21st Century Enterprises, Inc. ("**21st Century**"); CD Sanders Enterprises, Ltd. ("**CD**

**Sanders**"); Sanders Enterprises Inc. ("**Sanders Inc.**" and with Mr. Sanders, Debtor, S&S, 21st

Century, and CD Sanders, the "**Sanders Parties**"); King III SBW, LLC ("**King III**"); Mighty

Oak Group, LLC ("**Mighty Oak**"); KMMP Homes, LLC ("**KMMP**"); William Brannen, Jr.

("**Mr. Brannen**"); and Kathy Pecora ("**Ms. Pecora**" and with King III, Mighty Oak, KMMP,

and Mr. Brannen, the "**Cobb County Parties**"; and with Trustee, Mr. Sanders, Debtor, S&S,

21st Century, CD Sanders, Sanders Inc., King III, Mighty Oak, KMMP, and Mr. Brannen, the

"**Parties**").  In support of this motion, Trustee respectfully shows the Court as follows:

**Jurisdiction and Venue**

1.      This motion is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has

jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334.  Venue of this case in this

District is proper under 28 U.S.C. §§ 1408 and 1409.

## Background

### a. General Background

2.      On July 26, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief

under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended,

modified, or supplemented, the "**Bankruptcy Code**") in the United States Bankruptcy Court for

the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 7

Case No. 18-62370-WLH (the "**Bankruptcy Case**").

3.      Trustee was thereafter appointed and remains the duly acting Chapter 7 trustee in

this Bankruptcy Case.

4.      At the commencement of the Bankruptcy Case, a bankruptcy estate was created

pursuant to 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and that Bankruptcy Estate includes

all Debtor's legal or equitable interests in property as of the commencement of the Bankruptcy

Case and any interest in property that the Bankruptcy Estate acquires after commencement of the

Bankruptcy Case. 11 U.S.C. § 541(a)(1) and (7) (2018). Trustee is the sole representative of the

Bankruptcy Estate. 11 U.S.C. § 323(a) (2018).

### b. Debtor's Business Interests

5.      On her Schedule A/B, Debtor scheduled her sole ownership interest in S&S.

[Doc. No. 10 at page 7 of 57].  And, on her original Statement of Financial Affairs ("**SOFA**"),

Debtor indicated that she was an officer, director, or managing executive of S&S.  [Doc. No. 10

at page 44 of 57].

6.      On October 29, 2018, Debtor amended her SOFA to indicate that, in addition to

serving as an officer of S&S, she is also an officer, director, or managing executive of CD

Sanders and Sanders Inc.  [Doc. No. 35 at pages 1, 4, and 5 of 5], but she did not indicate an

15938843v1

ownership interest in these entities. Debtor maintains that she does not have an ownership interest in these entities.

### c. The Cobb County Lawsuit

7.      Upon information and belief, King III was formed in October of 2012 for the sole purpose of constructing and selling a single family home located at 11755 King Road, Roswell, Georgia (the "**King Property**").

8.      With respect to the King Property, disputes arose over construction of improvements on that property and those disputes resulted in a lawsuit currently pending in Cobb County Superior Court, Civil Action File No. 15-1-1531 (the "**Cobb County Lawsuit**").

9.      The King Property sold and that sale resulted in net proceeds of $450,000.00 (the "**Registry Funds**"), which have been paid into and remain in the registry of the Cobb County Superior Court.

10.      Mighty Oak joined the Cobb County Lawsuit as a third-party plaintiff/defendant and, in December 2016, was granted summary judgment against Debtor, Mr. Brennan and KMMP. On January 5, 2017, Mighty Oak received an Amended Order of the same judgment in the amount of $182,040.00 through the date of the Order and reserving attorney's fees (the "**Amended Order**").

11.      Following a motion to set aside or amend filed by Debtor and S&S on April 18, 2018, the trial court entered another order granting Mighty Oak additional interest and attorney's fees leading to a total judgment of $242,245.00 (the "**Judgment**"), but it clarified that the Judgment was only against Debtor, Mr. Brannen, and Ms. Pecora and not S&S or King III.

### d. Transfer of $650,000.00 Note and Security Deed from S&S to CD Sanders

12.      As part of his investigation of Debtor's financial affairs, Trustee asserts that on or

15938843v1

about March 25, 2010, S&S (owned solely by Debtor) received a sole ownership interest in that certain real property with a common address of 1880 West Oak Parkway, Ste. 112, Marietta, Georgia 30062 (the "**West Oak Property**").  Debtor asserts that this interest was never meant to be owned by S&S and was transferred into its name in error.  Upon information and belief, the West Oak Property was owned free and clear.

13.     On or about January 30, 2017, S&S sold the West Oak Property to KB Marietta LLC for a sale price of $650,000.00.  Upon information and belief, as part of this transaction, S&S received a note from KB Marietta LLC in the amount of $650,000.00 (the "**Note**") and took a security interest in the West Oak Property (the "**West Oak Security Interest**") through a security deed (the "**West Oak Security Deed**") to secure repayment of the Note.

14.     On or about February 10, 2017, S&S transferred the West Oak Security Deed to CD Sanders via an Assignment of Security Interest (the "**Assignment**").  Upon information and belief, KB Marietta LLC pays $4,500.00 per month as a result of the Note. Debtor asserts that the Assignment was executed to rectify the mistake in ownership that was in place at the time of the sale.

15.     Disputes (the "**Disputes**") have arisen between the Parties regarding how the Registry Funds should be divided and whether the Assignment is avoidable and recoverable by Trustee on behalf of the Bankruptcy Estate.

### e. The Mediation

16.     On July 22, 2020, the Bankruptcy Court entered an order authorizing the Parties to mediate the Disputes through a mediation hosted by the Honorable Mary Grace Diehl (the "**Mediation**").

15938843v1

4

*f. Timely Filed Claims against the Estate*

17.     The total of the timely filed, unsecured claims against the Bankruptcy Estate is $11,877.69.

### The Proposed Settlement

18.     As a result of the Mediation, the Parties have entered into a settlement agreement (the "**Settlement Agreement**") that resolves the Disputes.   A true and correct copy of that Settlement Agreement is attached to this motion and incorporated herein by reference as Exhibit "A" (the "**Settlement Agreement**").  The material terms of the Settlement Agreement follow:[1]

   a.  After the Settlement Approval Order becomes final, Mr. Sanders shall pay a total of $24,500.00 (the "**$24,500.00 Settlement Funds**") in good funds to Trustee.[2]

   b.  Within ten (10) business days of the Settlement Approval Order becoming a final order, Trustee, Mr. Sanders, S&S, Mr. Brannen, King III, Mighty Oak, and any other Party deemed necessary, shall file a motion in the Cobb County Lawsuit, requesting that the Superior Court of Cobb County enter an order directing the Clerk of Court for the Superior Court of Cobb County to distribute the Registry Funds, as follows:

      i.  $25,500.00 of the Registry Funds shall be paid to Trustee for the benefit of the Bankruptcy Estate (the "**$25,500.00 Registry Funds**").  For the avoidance of doubt, the Parties stipulate and agree that the $25,500.00 Registry Funds shall be free and clear of any liens, claims, or interests, including any exemption asserted by or on behalf of Debtor, and be available for Trustee to distribute in accordance with the Bankruptcy Code; and

      ii.  The remainder of the Registry Funds (the "**Remaining Registry Funds**"), in the approximate amount of $424,500.00, shall be paid to Mighty Oak, King III, Mr. Brannen, and Ms. Pecora to be divided as Mighty Oak, King III, Mr. Brannen, and Ms. Pecora deem appropriate.   For the avoidance of doubt, Mr. Sanders,

---

[1]     The following is a summary of the Settlement Agreement and is not intended to be comprehensive.  To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[2]     Capitalized terms not defined in this motion shall have the meanings ascribed to them in the Settlement Agreement.

5

Trustee, S&S, Sanders Inc., CD Sanders, and 21st Century hereby release all liens, claims, and interests in the Remaining Registry Funds, if any. For the further avoidance of doubt, Trustee hereby releases any claim that Debtor, and thus the Bankruptcy Estate, may have to a distribution from King III as to the Remaining Registry Funds. Finally, and again, for the avoidance of doubt, Mr. Sanders and Debtor shall cause any other entity that they own to release all liens, claims, and interests in the Remaining Registry Funds.

c.  Within ten (10) business days of the Clerk of Court for the Superior Court of Cobb County distributing the Registry Funds in accordance with Section 2.3 of the Settlement Agreement, the Parties shall file a stipulation dismissing the Cobb County Lawsuit with prejudice.

d.  Within ten (10) business days of the Settlement Approval Order becoming a final order, the Cobb County Parties shall release or cancel any lis pendens, liens, or judgment liens that Mighty Oak, King III, KMMP, Mr. Brannen, or Ms. Pecora may have against Debtor, Mr. Sanders, or any entity owned by Debtor or Mr. Sanders arising from the Cobb County Lawsuit.

e.  Mr. Brannen, King III, and KMMP release any claim that they have filed against the Bankruptcy Estate in the Bankruptcy Case. For the avoidance of doubt, within ten (10) business days of the Settlement Approval Order becoming a final order, Mr. Brannen shall withdraw Claim No. 6 filed in the Bankruptcy Case, King III shall withdraw Claim No. 7 filed in the Bankruptcy Case, and KMMP shall withdraw Claim No. 8 filed in the Bankruptcy Case.

f.  The Parties stipulate and agree that neither the Sanders Parties nor the Cobb County Parties shall have a claim in the Bankruptcy Case against the Bankruptcy Estate for or on account of payment of all or any portion of the $24,500.00 Settlement Funds or the $25,500.00 Registry Funds, or for any reason, and that neither the Sanders Parties nor the Cobb County Parties, nor any of their affiliates, agents, principals, or subsidiaries shall receive a distribution from the Bankruptcy Estate.

g.  The Parties grant broad and general releases to one another; provided, however, that neither the Bankruptcy Estate nor Trustee is providing Debtor a release.

### Relief Requested

19.  Trustee requests an order from the Bankruptcy Court approving the Settlement

Agreement.

**Basis for Relief**

20.    Rule 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd.  (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> > (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549.  In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes.  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985).  Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors.  *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[3]

21.    The proposed Settlement Agreement between the Parties is the product of arms' length negotiations conducted at a mediation overseen by the Honorable Mary Grace Diehl, and

---

[3]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

it reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

22.    Given the potential time and expense of litigating the Disputes, and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the delay before the final outcome is known (including potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement on the terms described in the Settlement Agreement is a proper exercise of Trustee's business judgment and in the best interests of the Bankruptcy Estate. In fact, Trustee estimates that litigating the Disputes could take months, if not years, and could cost the Bankruptcy Estate tens (if not hundreds) of thousands of dollars in additional administrative expenses, without any certainty of a favorable outcome.  The proposed Settlement Agreement allows the Bankruptcy Estate to avoid these costs (and risks) and creates $50,000.00 in free and clear funds that Trustee will distribute to unsecured creditors, whether priority or non-priority, in accordance with the priority scheme established by the Bankruptcy Code.   In summary, the proposed Settlement Agreement represents an advantageous result for the Bankruptcy Estate and clearly falls within the range of reasonableness required under *Justice Oaks*.

23.    Finally, Trustee estimates that the proposed settlement will allow him to make a meaningful, if not substantial distribution to holders of timely filed, non-priority, general unsecured claims.

24.    Under the standard set forth above and for the reasons previously detailed in this motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement.

15938843v1

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an

Order:

a)      granting this settlement motion and approving the Settlement Agreement;

b)       authorizing Trustee to take actions reasonably necessary to effectuate the terms

of the Settlement Agreement;  and

c)      granting to Trustee such other and further relief as the Court deems just and

appropriate.

Respectfully submitted, this 11th day of December, 2020.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By:*/s/ Michael J. Bargar*
      Michael J. Bargar
      Georgia Bar No. 645709
      michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

15938843v1

**EXHIBIT "A" FOLLOWS**

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") dated as of ___December 10___, 2020 (the "**Effective Date**"), is entered between S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate of Connie Sanders; Deene J. Sanders ("**Mr. Sanders**"), an individual resident of the State of Georgia; Connie Sanders ("**Debtor**"), an individual resident of the State of Georgia; S&S Commercial Contractors, Inc. ("**S&S**"), a State of Georgia corporation; 21st Century Enterprises, Inc. ("**21st Century**"), a State of Georgia corporation; CD Sanders Enterprises, Ltd. ("**CD Sanders**"), a State of Georgia corporation; Sanders Enterprises Inc. ("**Sanders Inc.**" and with Mr. Sanders, Debtor, S&S, 21st Century, and CD Sanders, the "**Sanders Parties**"), a State of Georgia corporation; King III SBW, LLC ("**King III**"), a State of Georgia limited liability company; Mighty Oak Group, LLC ("**Mighty Oak**"), a State of Georgia limited liability company; KMMP Homes, LLC ("**KMMP**"), a State of Georgia limited liability company; William Brannen, Jr. ("**Mr. Brannen**"), an individual resident of the State of Georgia; and Kathy Pecora ("**Ms. Pecora**" and with King III, Mighty Oak, KMMP, and Mr. Brannen, the "**Cobb County Parties**"; and with Trustee, Mr. Sanders, Debtor, S&S, 21st Century, CD Sanders, Sanders Inc., King III, Mighty Oak, KMMP, and Mr. Brannen, the "**Parties**"), an individual resident of the State of Georgia.

## Background

### a. General Background

1.    On July 26, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 7 Case No. 18-62370-WLH (the "**Bankruptcy Case**").

2.    Trustee was thereafter appointed and remains the duly acting Chapter 7 trustee in this Bankruptcy Case.

3.    At the commencement of the Bankruptcy Case, a bankruptcy estate was created pursuant to 11 U.S.C. § 541(a) (the "**Bankruptcy Estate**"), and that Bankruptcy Estate includes all Debtor's legal or equitable interests in property as of the commencement of the Bankruptcy Case and any interest in property that the Bankruptcy Estate acquires after commencement of the Bankruptcy Case. 11 U.S.C. § 541(a)(1) and (7) (2018). Trustee is the sole representative of the Bankruptcy Estate. 11 U.S.C. § 323(a) (2018).

### b. Debtor's Business Interests

4.    On her Schedule A/B, Debtor scheduled her sole ownership interest in S&S. [Doc. No. 10 at page 7 of 57]. And, on her original Statement of Financial Affairs ("**SOFA**"), Debtor indicated that she was an officer, director, or managing executive of S&S. [Doc. No. 10 at page 44 of 57].

15588248v1
15861545v1

5.    On October 29, 2018, Debtor amended her SOFA to indicate that, in addition to serving as an officer of S&S, she is also an officer, director, or managing executive of CD Sanders and Sanders Inc. [Doc. No. 35 at pages 1, 4, and 5 of 5], but she did not indicate an ownership interest in these entities. Debtor maintains that she does not have an ownership interest in these entities.

### c. The Cobb County Lawsuit

6.    Upon information and belief, King III was formed in October of 2012 for the sole purpose of constructing and selling a single family home located at 11755 King Road, Roswell, Georgia (the "**King Property**").

7.    With respect to the King Property, disputes arose over construction of improvements on that property and those disputes resulted in a lawsuit currently pending in Cobb County Superior Court, Civil Action File No. 15-1-1531 (the "**Cobb County Lawsuit**").

8.    The King Property sold and that sale resulted in net proceeds of $450,000.00 (the "**Registry Funds**"), which have been paid into and remain in the registry of the Cobb County Superior Court.

9.    Mighty Oak joined the Cobb County Lawsuit as a third-party plaintiff/defendant and, in December 2016, was granted summary judgment against Debtor, Mr. Brennan and KMMP. On January 5, 2017, Mighty Oak received an Amended Order of the same judgment in the amount of $182,040.00 through the date of the Order and reserving attorney's fees (the "**Amended Order**").

10.   Following a motion to set aside or amend filed by Debtor and S&S on April 18, 2018, the trial court entered another order granting Mighty Oak additional interest and attorney's fees leading to a total judgment of $242,245.00 (the "**Judgment**"), but it clarified that the Judgment was only against Debtor, Mr. Brannen, and Ms. Pecora and not S&S or King III.

### d. Transfer of $650,000.00 Note and Security Deed from S&S to CD Sanders

11.   As part of his investigation of Debtor's financial affairs, Trustee asserts that on or about March 25, 2010, S&S (owned solely by Debtor) received a sole ownership interest in that certain real property with a common address of 1880 West Oak Parkway, Ste. 112, Marietta, Georgia 30062 (the "**West Oak Property**"). Debtor asserts that this interest was never meant to be owned by S&S and was transferred into its name in error. Upon information and belief, the West Oak Property was owned free and clear.

12.   On or about January 30, 2017, S&S sold the West Oak Property to KB Marietta LLC for a sale price of $650,000.00. Upon information and belief, as part of this

Page 2 of 12

EXECUTION COPY

transaction, S&S received a note from KB Marietta LLC in the amount of $650,000.00 (the "**Note**") and took a security interest in the West Oak Property (the "**West Oak Security Interest**") through a security deed (the "**West Oak Security Deed**") to secure repayment of the Note.

13.    On or about February 10, 2017, S&S transferred the West Oak Security Deed to CD Sanders via an Assignment of Security Interest (the "**Assignment**"). Upon information and belief, KB Marietta LLC pays $4,500.00 per month as a result of the Note. Debtor asserts that the Assignment was executed to rectify the mistake in ownership that was in place at the time of the sale.

14.    Disputes have arisen between the Parties regarding how the Registry Funds should be divided and whether the Assignment is avoidable and recoverable by Trustee on behalf of the Bankruptcy Estate.

15.    On July 22, 2020, the Bankruptcy Court entered an order authorizing the Parties to mediate the Disputes through a mediation hosted by the Honorable Mary Grace Diehl (the "**Mediation**").

16.    As a result of the Mediation, the Parties have reached an agreement resolving the Disputes.

Accordingly, the Parties agree as follows:

1.    **Background.**  The recitations in the above background section are incorporated into this Agreement as if set forth fully herein.

2.    **Resolution of the Disputes.**  Subject to approval of this Agreement by the Bankruptcy Court, following notice and the opportunity for a hearing, the Parties agree to resolve the Disputes as follows:

2.1.    *Approval of Proposed Settlement.*  Within five (5) business days after execution of this Agreement by each of the Parties, Trustee shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Settlement Approval Motion**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement contemplated herein ("**Settlement Approval Order**").

For the purposes of this Agreement, the Settlement Approval Order becomes final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

EXECUTION COPY

2.2. *Payment of Settlement Funds by Mr. Sanders to Trustee.* After the Settlement Approval Order becomes final, Mr. Sanders shall pay a total of $24,500.00 (the "**$24,500.00 Settlement Funds**") in good funds to Trustee on or before December 31, 2020.

For avoidance of doubt, Mr. Sanders shall pay the $24,500.00 Settlement Funds to Trustee by delivering a check made payable to "S. Gregory Hays, Trustee (Sanders)" to counsel for Trustee, Michael J. Bargar, addressed as follows:

Michael J. Bargar
Arnall Golden Gregory LLP
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363

2.3. *Distribution of Registry Funds in Superior Court of Cobb County.* Within ten (10) business days of the Settlement Approval Order becoming a final order, Trustee, Mr. Sanders, S&S, Mr. Brannen, King III, Mighty Oak, and any other Party deemed necessary, shall file a motion in the Cobb County Lawsuit, requesting that the Superior Court of Cobb County enter an order directing the Clerk of Court for the Superior Court of Cobb County to distribute the Registry Funds, as follows:

2.3.1. $25,500.00 of the Registry Funds shall be paid to Trustee for the benefit of the Bankruptcy Estate (the "**$25,500.00 Registry Funds**"). For the avoidance of doubt, the Parties stipulate and agree that the $25,500.00 Registry Funds shall be free and clear of any liens, claims, or interests, including any exemption asserted by or on behalf of Debtor, and be available for Trustee to distribute in accordance with the Bankruptcy Code; and

2.3.2. The remainder of the Registry Funds (the "**Remaining Registry Funds**"), in the approximate amount of $424,500.00, shall be paid to Mighty Oak, King III, Mr. Brannen, and Ms. Pecora to be divided as Mighty Oak, King III, Mr. Brannen, and Ms. Pecora deem appropriate. For the avoidance of doubt, Mr. Sanders, Trustee, S&S, Sanders Inc., CD Sanders, and 21st Century hereby release all liens, claims, and interests in the Remaining Registry Funds, if any. For the further avoidance of doubt, Trustee hereby releases any claim that Debtor, and thus the Bankruptcy Estate, may have to a distribution from King III as to the Remaining Registry Funds. Finally, and again, for the avoidance of doubt, Mr. Sanders and Debtor shall cause any other entity that they own to release all liens, claims, and interests in the Remaining Registry Funds.

2.4. *Dismissal of the Cobb County Lawsuit with Prejudice.* Within ten (10) business days of the Clerk of Court for the Superior Court of Cobb County distributing the Registry Funds in accordance with Section 2.3 of this Agreement, the Parties shall file a stipulation dismissing the Cobb County Lawsuit with prejudice.

15588248v1
15861545v1

EXECUTION COPY

2.5.    *Release of Liens and Other Interests by the Cobb County Parties against Mr.*
*Sanders and Debtor and any entity owned by Mr. Sanders or Debtor.* Within ten
(10) business days of the Settlement Approval Order becoming a final order, the
Cobb County Parties shall release or cancel any lis pendens, liens, or judgment liens
that Mighty Oak, King III, KMMP, Mr. Brannen, or Ms. Pecora may have against
Debtor, Mr. Sanders, or any entity owned by Debtor or Mr. Sanders arising from
the Cobb County Lawsuit.

2.6.    *Waiver and Withdrawal of Claims filed by Mr. Brannen, King III, and KMMP*
*against the Bankruptcy Estate.* Mr. Brannen, King III, and KMMP hereby release
any claim that they have filed against the Bankruptcy Estate in the Bankruptcy
Case. For the avoidance of doubt, within ten (10) business days of the Settlement
Approval Order becoming a final order, Mr. Brannen shall withdraw Claim No. 6
filed in the Bankruptcy Case, King III shall withdraw Claim No. 7 filed in the
Bankruptcy Case, and KMMP shall withdraw Claim No. 8 filed in the Bankruptcy
Case.

2.7.    *Release by the Cobb County Parties of Trustee and the Bankruptcy Estate.*
Effective upon the Cobb County Parties receiving the Remaining Registry Funds
and the Settlement Approval Order becoming final, and except for the rights, duties,
and obligations created or preserved under this Agreement, the Cobb County
Parties release, acquit, and forever discharge Trustee and the Bankruptcy Estate and
each and every past and present agent, servant, employee, representative and
attorney of Trustee or the Bankruptcy Estate from any and all Claims (as defined
in Section 9 of this Agreement) of any kind, character or nature whatsoever, known
or unknown, fixed or contingent, that the Cobb County Parties may have or claim
to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.8.    *Release by Trustee of the Cobb County Parties.* Effective upon Trustee's receiving
the $25,500.00 Registry Funds and the Settlement Approval Order becoming final,
and except for the rights, duties, and obligations created or preserved under this
Agreement, Trustee releases, acquits, and forever discharges the Cobb County
Parties from any and all Claims (as defined in Section 9 of this Agreement) of any
kind, character or nature whatsoever, known or unknown, fixed or contingent, that
Trustee may have or claim to have against the Cobb County Parties prior to the
Effective Date.

2.9.    *Release by Trustee of Mr. Sanders, S&S, 21st Century, CD Sanders, and Sanders*
*Inc.* Effective upon Trustee's receiving the $24,500.00 Settlement Funds in good
funds from Mr. Sanders and the Settlement Approval Order becoming final, and
except for the rights, duties, and obligations created or preserved under this
Agreement, Trustee releases, acquits, and forever discharges Mr. Sanders, S&S,
21st Century, CD Sanders, and Sanders Inc. from any and all Claims (as defined in
Section 9 of this Agreement) of any kind, character or nature whatsoever, known
or unknown, fixed or contingent, that Trustee may have or claim to have against

15588248v1
15861545v1

EXECUTION COPY

Mr. Sanders, S&S, 21st Century, CD Sanders, and Sanders Inc. prior to the Effective Date.

2.10.   *Release by Mr. Sanders, S&S, 21st Century, CD Sanders, and Sanders Inc. of Trustee and the Bankruptcy Estate.* Effective upon the Settlement Approval Order becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement, Mr. Sanders, S&S, 21st Century, CD Sanders, and Sanders Inc. release, acquit, and forever discharge Trustee and the Bankruptcy Estate and each and every past and present agent, servant, employee, representative and attorney of Trustee or the Bankruptcy Estate from any and all Claims (as defined in Section 9 of this Agreement) of any kind, character or nature whatsoever, known or unknown, fixed or contingent, that the Mr. Sanders, S&S, 21st Century, CD Sanders, and Sanders Inc. may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.11.   *Release by the Cobb County Parties of the Sanders Parties.* Effective upon the Cobb County Parties receiving the Remaining Registry Funds and the Settlement Approval Order becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement, the Cobb County Parties, on behalf of themselves and all other affiliates or related entities owned or controlled by each of the Cobb County Parties, individually or by their principals, release, acquit, and forever discharge the Sanders Parties from any and all Claims (as defined in Section 9 of this Agreement) of any kind, character or nature whatsoever, known or unknown, fixed or contingent, that the Cobb County Parties may have or claim to have against the Sanders Parties prior to the Effective Date.

2.12.   *Release by Sanders Parties of the Cobb County Parties.*   Effective upon the Settlement Approval Order becoming final, and except for the rights, duties, and obligations created or preserved under this Agreement, the Sanders Parties, on behalf of themselves and all other affiliates or related entities owned or controlled by Mr. Sanders or Debtor, release, acquit, and forever discharge the Cobb County Parties from any and all Claims (as defined in Section 9 of this Agreement) of any kind, character or nature whatsoever, known or unknown, fixed or contingent, that the Sanders Parties may have or claim to have against the Cobb County Parties prior to the Effective Date.

2.13.   *No Claim Against the Bankruptcy Estate.*   The Parties stipulate and agree that neither the Sanders Parties nor the Cobb County Parties shall have a claim in the Bankruptcy Case against the Bankruptcy Estate for or on account of payment of all or any portion of the $24,500.00 Settlement Funds or the $25,500.00 Registry Funds, or for any reason, and that neither the Sanders Parties nor the Cobb County Parties, nor any of their affiliates, agents, principals, or subsidiaries shall receive a distribution from the Bankruptcy Estate.

15588248v1
15861545v1

EXECUTION COPY

3.   **No Admissions.** The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly contingent upon and subject to the approval of the Bankruptcy Court. The Parties further acknowledge and agree that this Agreement will not and may not be used or construed as an admission of any liability or responsibility to any Party or to any other persons.

4.   **Entire Agreement; Modification.** The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein. The Parties further agree that this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by the Parties and that any material amendment is subject to Bankruptcy Court approval.

5.   **Voluntary Execution of Agreement.** The Parties hereby mutually acknowledge and represent and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know, and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further mutually acknowledge and represent and warrant that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any of the Parties but rather shall be given fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

6.   **Authority of Parties.** The persons executing this Agreement represent and warrant that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.

7.   **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

8.   **Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims regarding the interpretation, validity, construction or other issue relating to or concerning this Agreement. An action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the Bankruptcy Court which shall retain jurisdiction over the subject matter and the Parties for this purpose.

9.   **Definition of Claims.** The term "Claims" means all claims or causes of action that were asserted or could have been brought as of the Effective Date by or on behalf of any Party to this Agreement, either directly or indirectly, in respect of, in relation to, or in connection with the Bankruptcy Case or the Cobb County Lawsuit.

15588248v1
15861545v1

EXECUTION COPY

10.    **Applicable Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

11.    **Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force; provided, however, that the payments required by Section 2.2 of this Agreement are central to the Agreement and may not be severed or stricken from the Agreement.

12.    **Notices.** Any notices by Parties provided for or permitted under this Agreement, or by law, shall be in writing and shall be deemed received: (a) when personally delivered to a party, on the date of such delivery; or (b) when sent via electronic mail to a party at the electronic mail address set forth below, on the date of transmission, provided that the transmitting Party has no reasonable belief that the electronic mail was not delivered; or (c) when deposited in the United States Mail, certified and postage prepaid, addressed to such party at the address set forth below, five (5) days following the deposit of such notice in the mail. Notices shall be sent to the parties as follows

12.1.    *If to Trustee*:

> Michael J. Bargar
> Arnall Golden Gregory LLP
> 171 17th Street, NW, Suite 2100
> Atlanta, GA 30363
> michael.bargar@agg.com (electronic mail)

12.2.    *If to the Sanders Parties*:

> Ian M. Falcone
> The Falcone Law Firm, P.C.
> 363 Lawrence Street
> Marietta, GA 30060
> imf@falconefirm.com (electronic mail)

> and

> Will B. Geer
> Wiggam & Geer, LLC
> 50 Hurt Plaza, SE, Suite 1150
> Atlanta, Georgia 30303
> wgeer@wiggamgeer.com (electronic mail)

12.3.    *If to the Cobb County Parties:*

15588248v1
15861545v1

EXECUTION COPY

T. Owen Farist
GDCR, Attorneys at Law
49 Atlanta Street
Marietta, GA 30060
ofarist@gdcrlaw.com (electronic mail)

and

Mighty Oak Group, LLC
c/o Marcus Whitesides
1880 West Oak Parkway, Ste 103
Marietta, GA 30062
mark@mocapital.us (electronic mail)

The address to which notices are to be sent may be changed by any party by providing notice of the new address as provided herein.

13.   **Restoration.**  In the event that the Bankruptcy Court denies approval of this Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

14.   **Parties to Bear Own Costs.**  Except as otherwise stated in this Agreement, each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

15.   **Time is of the Essence.**  Time is of the essence in this Agreement.

[INTENTIONALLY LEFT BLANK]

Page 9 of 12

15588248v1
15861545v1

EXECUTION COPY

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____

S. Gregory Hays, as and only as Chapter 7
Trustee for the Bankruptcy Estate of Connie Sanders
(Case No. 18-62370-WLH)

Dated: 12-10-2020

**DEENE J. SANDERS**

_____

Deene J. Sanders

Dated:_____

**CONNIE SANDERS**

_____

Connie Sanders

Dated:_____

**S&S COMMERCIAL CONTRACTORS, INC.**

By:_____
    Name:
    Title:
Dated:_____

**21st CENTURY ENTERPRISES, INC.**

By:_____
    Name:
    Title:
Dated:_____

15588248v1
15861545v1

EXECUTION COPY

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____
S. Gregory Hays, as and only as Chapter 7
Trustee for the Bankruptcy Estate of Connie Sanders
(Case No. 18-62370-WLH)

Dated:_____

**DEENE J. SANDERS**

_Deene J. Sanders_
_____
Deene J. Sanders

Dated: 12 - 9 - 2020

**CONNIE SANDERS**

_Connie Sanders_
_____
Connie Sanders

Dated: 11 / 25 / 2020

**S&S COMMERCIAL CONTRACTORS, INC.**

By: _Connie Sanders_
_____
Name: Connie Sanders
Title:
Dated: 11 / 25 / 2020

**21st CENTURY ENTERPRISES, INC.**

By: _Deene J. Sanders_
_____
Name:
Title:
Dated: 12 - 9 - 2020

Page 10 of 12

15588248v1
15861545v1

EXECUTION COPY

**CD SANDERS ENTERPRISES, LTD.**

By: ~~Reene J. Sanders~~

    Name:
    Title:
Dated: 12-9-2020

**SANDERS ENTERPRISES, INC.**

By: ~~Reene J. Sanders~~

    Name:
    Title:
Dated: 12-9-2020

[INTENTIONALLY LEFT BLANK—SIGNATURES CONTINUE ON FOLLOWING PAGE]

Page 11 of 12

15588248v1
15861545v1

Doc ID: 2e571177552822662ccdea3fef786d7bfea0a4d8

DRAFT

**KING III SBW, LLC**

By: _____
    Name: WILLIAM BRANNEN, JR.
    Title: PRINCIPAL
Dated: 11/24/20

**MIGHTY OAK GROUP, LLC**

By: _____
    Name:
    Title:
Dated: _____

**KMMP HOMES, LLC**

By: _____
    Name:
    Title:
Dated: _____

**WILLIAM BRANNEN, JR.**

_____
William Brannen, Jr.

Dated: 1 9 / 24 / 2020

**KATHY PECORA**

_____
Kathy Pecora

Dated: _____

15588248v1

EXECUTION COPY

**KING III SBW, LLC**

By:_____
    Name:
    Title:
Dated:_____

**MIGHTY OAK GROUP, LLC**

By:_____
    Name:
    Title:
Dated:_____

**KMMP HOMES, LLC**

By:_____
    Name: KATHLEEN PECORA
    Title: MEMBER
Dated: 11/24/2020

**WILLIAM BRANNEN, JR.**


_____
William Brannen, Jr.

Dated:_____

**KATHY PECORA**


_____
Kathy Pecora

Dated: 11/24/2020

15588248v1
15861545v1

EXECUTION COPY

**KING III SBW, LLC**

By:_____
   Name:
   Title:
Dated:_____

**MIGHTY OAK GROUP, LLC**

By:_____
   Name: Marcus Whitesides
   Title: President
Dated: 12/10/20

**KMMP HOMES, LLC**

By:_____
   Name:
   Title:
Dated:_____

**WILLIAM BRANNEN, JR.**


_____
William Brannen, Jr.

Dated:_____

**KATHY PECORA**


_____
Kathy Pecora

Dated:_____

Page 12 of 12

15588248v1
15861545v1

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Settlement Agreement Hays Sanders_FINAL EXECUTION... |
| **FILE NAME** | Settlement Agreem...Y_15861545(1).pdf |
| **DOCUMENT ID** | 2e571177552822662ccdea3fef786d7bfea0a4d8 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT**
**11 / 25 / 2020**
16:15:07 UTC

Sent for signature to Connie Sanders (connies1010@yahoo.com)
from imf@falconefirm.com
IP: 73.7.190.2

**VIEWED**
**11 / 25 / 2020**
17:26:11 UTC

Viewed by Connie Sanders (connies1010@yahoo.com)
IP: 107.77.236.49

**SIGNED**
**11 / 25 / 2020**
17:34:28 UTC

Signed by Connie Sanders (connies1010@yahoo.com)
IP: 107.77.236.49

**COMPLETED**
**11 / 25 / 2020**
17:34:28 UTC

The document has been completed.

**CERTIFICATE OF SERVICE**

This is to certify that I have served a true and correct copy of the foregoing *Motion to Approve Settlement Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure* by first class United States mail on the following persons or entities at the addresses stated:

Office of the United States Trustee
362 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Ian Falcone
The Falcone Law Firm, P.C.
363 Lawrence Street
Marietta, GA 30060

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

Will B. Geer
Wiggam & Geer, LLC
50 Hurt Plaza, SE
Suite 1150
Atlanta, GA 30303

T. Owen Farist
GDCR
49 Atlanta Street
Marietta, GA 30060

Mighty Oak Group, LLC
c/o Marcus Whitesides
1880 West Oak Parkway, Ste 103
Marietta, GA 30062

Connie Sanders
1196 Lincoln Drive
Marietta, GA 30066

This 11th day of December, 2020.

*/s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709

15938843v1